UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

JOSHUA JONES,

           Plaintiff,           Case No. 2:20-cv-155

v.                                   Honorable Paul L. Maloney

TRAVIS ADAMS et al.,

           Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Matchall, Peterson, Perttu, and Wilson.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The

events about which he complains, however, occurred at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. Plaintiff sues Corrections Officer Travis Adams, Acting Warden L. Matchall, Assistant Deputy Warden D. Peterson, Resident Unit Manager[1] Unknown Perttu, and Prisoner Counselor T. Wilson.

Plaintiff alleges that he wrote a PREA grievance on Defendant Adams on February 11, 2019. Plaintiff states that Defendant Adams had repeatedly told him that if he did not show him his penis, he would deny Plaintiff meals and write misconduct reports on Plaintiff. Two other prisoners, Dorris #798653 and Gills #682547, overheard Defendant Adams comments to Plaintiff and are willing to attest to it. Throughout February and March of 2019, Defendant Adams' comments became more threatening and derogatory, including requests to see Plaintiff's penis and to touch it, as well as requests for Plaintiff to touch his penis. Sometimes Defendant Adams screamed at Plaintiff for refusing to give in to his requests.

On April 2, 2019, Defendant Adams threatened to have another officer do something to Plaintiff when he was released to the general population. Plaintiff claims that this threat was in retaliation for grievances that Plaintiff had filed on Defendant Adams. On April 11, 2019, Plaintiff filed another PREA grievance on Defendant Adams because every time Defendant Adams made rounds, he told Plaintiff "I will not feed you if you don't show me your dick." Plaintiff states that sometimes Defendant Adams threatened to write a misconduct on him.

On May 7, 2019, Plaintiff tried to tell Defendant Perttu about Defendant Adams, but Defendant Perttu did not respond. On May 8, 2019, Plaintiff wrote a grievance on Defendants Matchall, Peterson, Perttu, and Wilson, for failing to investigate Plaintiff's complaints against

---

[1] Plaintiff describes Defendant Perttu as a "Regular Unit Manager" or "RUM." "RUM" is the abbreviation for "Resident Unit Manager." *See* Michigan Civil Serv. Comm'n Job Specification, Resident Unit Manager, https://www.michigan.gov/documents/ResidentUnitManager_13112_7.pdf. The Court has used the correct job title.

Defendant Adams. On May 21, 2019, Plaintiff wrote a letter to Warden Lesatz complaining about Defendant Adams and requesting an investigation. Plaintiff states that nothing was done in response to his letter.

On June 3, 2019, Plaintiff wrote a grievance on Defendant Adams for retaliating against him. When Defendant Adams made his rounds, he banged the metal tip of the wand against Plaintiff's door and stated, "Because you like to write grievances, I am going to keep you up all night." Defendant Adams then woke Plaintiff up during each round that he made. In June and July, Plaintiff wrote PREA grievances on Defendant Adams for ordering Plaintiff to show him his penis and making threats when Plaintiff refused. Plaintiff told prison administration that he was going to have his family file a complaint with the Michigan State Police because of their refusal to investigate Defendant Adams.

On July 27, 2019, Plaintiff wrote a grievance on Defendant Adams for his threat to have Plaintiff set up when he was released into the general population. On July 31, 2019, Plaintiff wrote a grievance on prison administration for allowing Defendant Adams to threaten Plaintiff. On the same day, Defendant Adams stopped at Plaintiff's cell and told Plaintiff to show him his penis and then stood at Plaintiff's cell door for approximately thirty seconds. Plaintiff asked to see a sergeant and Defendant Adams smiled and said "no." Defendant Adams then walked away.

On August 7, 2019, Defendant Adams refused to allow Plaintiff to go to yard, stating that because Plaintiff liked writing grievances, he was never going to let Plaintiff go to yard. On August 16, 2019, Plaintiff wrote to Defendant Peterson requesting that he intervene between Plaintiff and Defendant Adams. Plaintiff did not receive a response. On August 25, 2019, Plaintiff wrote another letter to Defendant Peterson regarding the prior grievances that he had filed.

Plaintiff seeks compensatory and punitive damages, as well as equitable relief.

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## III.    Respondeat superior

Plaintiff fails to make specific factual allegations against Defendants Matchall, Peterson, Perttu, and Wilson, other than his claim that they failed to conduct an investigation in response to his grievances.  Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability.  *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).  A claimed constitutional violation must be based upon active unconstitutional behavior.  *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act.  *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).  Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  Plaintiff has failed to allege that Defendants Matchall, Peterson, Perttu, and Wilson engaged in any active unconstitutional behavior.  Accordingly, he fails to state a claim against them.

## IV.    Eighth Amendment

Plaintiff appears to be asserting that Defendant Adams violated his rights under the Eighth Amendment.  The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency."  *Rhodes v. Chapman*, 452 U.S. 337, 345-

46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

"[B]ecause the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the 'unnecessary and wanton infliction of pain' forbidden by the Eighth Amendment." *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (quoted cases omitted). "To prevail on a constitutional claim of sexual harassment, an inmate must therefore prove, as an objective matter, that the alleged abuse or harassment caused 'pain' and, as a subjective matter, that the officer in question acted with a sufficiently culpable state of mind." *Freitas*, 109 F.3d at 1338 (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).

Circuit courts have generally held that sexual harassment, absent contact or touching, does not satisfy the objective requirement because such conduct does not constitute the unnecessary and wanton infliction of pain. *See Morales v. Mackalm*, 278 F.3d 126, 132 (2d Cir. 2002) (allegations that prison guard asked prisoner to have sex with her and to masturbate in front of her and other female staffers did not rise to level of Eighth Amendment violation); *Barney v.*

6

*Pulsipher*, 143 F.3d 1299, 1311 n.11 (10th Cir. 1998) (allegations that county jailer subjected female prisoners to severe verbal sexual harassment and intimidation was not sufficient to state a claim under the Eighth Amendment); *Howard v. Everett*, No. 99-1277EA, 2000 WL 268493, at *1 (8th Cir. Mar. 10, 2000) (sexual comments and gestures by prison guards did not constitute unnecessary and wanton infliction of pain); *Zander v. McGinnis*, No. 97-1484, 1998 WL 384625, at *2 (6th Cir. June 19, 1998) (verbal abuse of mouthing "pet names" at prisoner for ten months failed to state an Eighth Amendment claim); *Murray v. United States Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) (magistrate judge correctly held that verbal abuse in the form of offensive remarks regarding a transsexual prisoner's bodily appearance, transsexualism, and presumed sexual preference cannot state an Eighth Amendment claim). However, the Sixth Circuit recently noted:

> But this Court held nearly three decades ago that sexual abuse of inmates can violate the Eighth Amendment even in the absence of physical touching by a corrections officer. *See Kent*, 821 F.2d at 1228 (unobstructed views of inmates showering). Other courts of appeals have reached the same conclusion. *See e.g.*, *Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015) (homophobic epithets); *DeTella*, 319 F.3d at 939 (ribald comments); *Daskalea*, 227 F.3d at 439-41 (forced striptease). Furthermore, the abuse alleged to have occurred in this case did not merely consist of words. It also entailed forced sexual acts. The fact that Drennen effectuated this sexual abuse by ordering Sherman to expose her breasts and masturbate, rather than by touching Sherman himself, does not change the fact that Sherman was repeatedly required to engage in sexual acts against her will.

*Rafferty v. Trumbull Cty., Ohio*, 915 F.3d 1087, 1096 (6th Cir. 2019).

The conduct alleged by Plaintiff in this case is similar to that addressed by the Sixth Circuit in *Rafferty*, except that Plaintiff did not comply with Defendant Adams repeated demands that Plaintiff expose himself. Despite the fact that Plaintiff resisted Defendant Adams' demands, the Court concludes that Plaintiff's Eighth Amendment claim is not clearly frivolous and may not be dismissed on initial review.

7

### V.     Retaliation

Plaintiff claims that Defendant Adams retaliated against him in violation of the First Amendment. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).

The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable of deterring a person of ordinary firmness*"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original). A specific threat of harm may satisfy the adverse-action requirement if it would deter a person of ordinary firmness from exercising his or her First Amendment rights, *see, e.g., Thaddeus-X*, 175 F.3d at 396, 398 (threat of physical harm); *Smith v. Yarrow*, 78 F. App'x 529, 542 (6th Cir. 2003) (threat to change drug test results). However, certain threats or deprivations are so *de minimis* that they do not rise to the level of being constitutional violations. *Thaddeus-X*, 175 F.3d at 398; *Smith*, 78 F. App'x at 542.

8

Plaintiff states that in response to the PREA grievances he filed on Defendant Adams, Defendant Adams banged the metal tip of the wand against Plaintiff's door during night rounds and stated, "Because you like to write grievances, I am going to keep you up all night." Defendant Adams then woke Plaintiff up during each round that he made.  On August 7, 2019, Defendant Adams refused to allow Plaintiff to go to yard, stating that because Plaintiff liked writing grievances, he was never going to let Plaintiff go to yard.  In addition, Plaintiff states that Defendant Adams accelerated his requests to see Plaintiff's penis in response to the PREA grievances and that he frequently threatened Plaintiff with misconduct tickets and the denial of food.  The Court concludes that Plaintiff's retaliation claim is not clearly frivolous and may not be dismissed on initial review.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Matchall, Peterson, Perttu, and Wilson will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's First and Eighth Amendment claims against Defendant Adams remain in the case.

An order consistent with this opinion will be entered.


Dated:   September 11, 2020                   /s/  Paul L. Maloney
                                              Paul L. Maloney
                                              United States District Judge